UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER R. HARVEY AND ROBERT              CIVIL ACTION
P. LOFBLAD

VERSUS                                  NO: 99-775

ROLAND J. JOYCE AND CTC                 SECTION: "J" (3)
MINERALS, INC.

### ORDER AND REASONS

Before the Court is defendant, Roland J. Joyce's, **Motion for Partial Summary Judgment** (Rec. Doc. 65). The motion is opposed. (Rec. Doc. 71). Having considered the memoranda of counsel, the record, and the applicable law, the Court finds that defendant's motion should be GRANTED in part and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1989 defendant Roland J. Joyce bought a fifty percent interest in defendant CTC Minerals, Inc. Joyce purchased the stock in his name for the benefit of a small group of investors: Joyce, Peter Harvey, Robert Lofblad, Roland Gray Jr., and John Allison. An Investor Agreement allotted portions of capital

contribution and interest among them. According to the investor agreement, the investor interests were as follows: Joyce - thirty percent; Harvey - forty-two percent; Gray - eight percent; Lofblad - sixteen percent; Allison - four percent.

By January, 1990, Gray was dissatisfied with the investment and wanted to sell his interest. In October 1990 there was an agreement whereby Gray relinquished his interest in CTC Minerals to Harvey and Joyce, and in return Harvey and Joyce executed a promissory note in Gray's favor. As a result, all of Gray's interest (eight percent of the Joyce shares, four percent equity in the company) was split between Harvey and Joyce, and they pledged the entirety of their newly increased interest (eighty percent of the Joyce shares, forty percent equity in the company) to Gray as security for the promissory note. As a result, Harvey and Joyce controlled eighty percent of the Joyce shares (forty percent of the total CTC Minerals' shares) subject to Gray's security interest (which was itself primed by a bank's security interest).

C.T. Carden died in 1995 and his heirs were bound by a 1989 Shareholders' Agreement to sell his shares to CTC Minerals. The heirs refused to comply with the agreement. Joyce filed a suit to enforce the Shareholders Agreement and was joined by Harvey and

Lofblad. The suit alleged individual claims and a derivative claim to enforce CTC Minerals' right to purchase the Carden shares. On July 20, 1998 a compromise between Carden's estate and the Joyce group of shareholders received court approval. Under this agreement, Joyce and CTC Minerals had an option to purchase the Carden heirs' shares. On August 31, 1998, the "August 1998 Agreement" was executed by Joyce, Harvey, and Lofblad. Under the August 1998 Agreement, several terms were to go into effect when Joyce, Harvey, and Lofblad, referred to in the agreement as "the Parties", acquired the Carden heirs' shares. One of these terms reapportioned the parties' interests in CTC Minerals, assigning Joyce a fifty-five percent interest, and Harvey and Lofblad combined a forty-five percent interest. It is undisputed that Lofblad's interest in CTC Minerals following the August 1998 Agreement is sixteen percent. Thus, if the agreement is effective, Harvey's interest following the August 1998 Agreement would have been twenty-nine percent.

Joyce, Harvey, and Lofblad, individually, never acquired the shares, but CTC Minerals did, pursuant to the settlement, on September 1, 1998, the day after the execution of the August 1998 Agreement. Following execution of the settlement,

3

Joyce, Harvey, and Lofblad were CTC Minerals' only shareholders.[1] The Carden shares were retired by CTC Minerals. Under the August 1998 Agreement Joyce would own a fifty-five percent interest in CTC Minerals, and Harvey and Lofblad, combined, would own a forty-five percent interest.

Plaintiffs filed suit on March 8, 1999 seeking, among other claims, to establish that Harvey owned forty-two percent of CTC Minerals' shares and Lofblad owned sixteen percent of CTC Minerals' shares, as indicated in the original investor agreement. Plaintiffs seek, among other things, a declaration that the August 1998 Agreement is of no legal force or effect. Joyce sought to stay the case pending arbitration based on a clause in the August 1998 Agreement. This Court denied the motion to stay, but did not rule on the effectiveness of the August 1998 Agreement. Joyce appealed. The Fifth Circuit Court of Appeals reversed this Court, finding a binding arbitration clause, but also avoided ruling on the effect of the August 1998 Agreement as a whole. This Court then stayed the litigation and ordered the parties to arbitrate.

In September 2004, Gray's estate decided to foreclose on

---

[1] The record is unclear what happened to Allison's interest, but no party contests that Joyce, Harvey, and Lofblad were CTC Minerals' only shareholders.

4

Harvey's interest in CTC Minerals for defaulting under the 1990 Promissory Note. In a move that Harvey protests, Joyce had given Gray's estate seven shares of CTC Minerals' stock in June 2004 and then bought back those shares to satisfy Joyce's indebtedness under the promissory note. Gray's estate foreclosed on Harvey's interest by auctioning off the interest in twenty-nine shares of CTC Minerals' stock, which Gray's estate and Joyce believed was the entirety of Harvey's interest, based on the August 1998 Agreement.

In March 2005, the arbitrator withdrew because of a conflict of interest regarding Harvey. The case was re-opened in this Court on August 4, 2005 when Joyce filed an answer and a counter-claim. Joyce's Motion for Partial Summary Judgment followed.

Joyce's Motion initially sought summary judgment (1) dismissing all claims asserted by Harvey and (2)dismissing Lofblad's claims for breaches of contract and fiduciary duty relating to the pledging of stock Certificate No. 2. However, during the briefing of the motion, Lofblad withdrew his claims against Joyce for wrongfully pledging stock Certificate No. 2. Therefore, the part of the motion dealing with Lofblad's claim will be denied as moot.

Also during briefing, Joyce has conceded that Harvey

retains claims against him, even if Harvey no longer owns any
interest in CTC Minerals. Therefore, the part of the motion
dealing with Harvey's claims that do not require a present
interest in CTC Minerals will be denied.

Because the remainder of the summary judgment motion
pertains to Harvey's interest in the litigation, the Court will
use his name to refer to the plaintiffs' positions.

**LEGAL STANDARD**

Summary judgment is appropriate where the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show there is no genuine
issue as to any material fact and that the moving party is
entitled to judgment as a matter of law. *Little v. Liquid Air
Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ.
Proc. 56(c)). The moving party bears the initial burden of
demonstrating to the court that there is an absence of genuine
factual issues. *Id*. Once the moving party meets that burden, the
non-moving party must go beyond the pleadings and designate facts
showing that there is a genuine issue of material fact in
dispute. *Id*. "A factual dispute is 'genuine' where a reasonable
jury could return a verdict for the non-moving party. If the
record, taken as a whole, could not lead a rational trier of fact

to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Little*, 37 F.3d 1075  (emphasis in original)(citations omitted).

## DISCUSSION

### A.   Plaintiffs' Rule 56(f) Request Fails

Counsel for Harvey requests that the Court deny or defer Joyce's motion pursuant to Federal Rule of Civil Procedure 56(f) because "the facts set forth in Joyce's Motion may be contraverted by further discovery, including the deposition of Roland Joyce." Pl.'s Opp. Ex. A at 2. Rule 56(f) provides:

> **When Affidavits are Unavailable.**
> Should it appear from the affidavits of a party
> opposing the motion that the party cannot for reasons
> stated present by affidavit facts essential to justify

7

the party's opposition, the court may refuse the
application for judgment or may order a continuance to
permit affidavits to be obtained or depositions to be
taken or may make such other order as is just.

To obtain a continuance under Rule 56(f) a party must demonstrate
"why he needs additional discovery and *how* the additional
discovery will create a genuine issue of material fact." *Krim v.*
*BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)
(emphasis in original). "The nonmoving party 'may not simply rely
on vague assertions that additional discovery will produce
needed, but unspecified facts.'" *Id.* (quoting *SEC v. Spence &*
*Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). The
information sought and its relevance should be identified "with
reasonable specificity." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284,
1292 (5th Cir. 1994). Parties seeking more time "do not need to
know the precise content of the requested discovery, but they do
need to give the district court some idea of how the sought-after
discovery might reasonably be supposed to create a factual
dispute." *Id.* This Court is unwilling to defer or deny Joyce's
motion pursuant to Rule 56(f) because plaintiff's testimony that
unidentified facts may be controverted, "did not state how
further discovery would have aided his cause of action, and thus,
he has failed to demonstrate that further discovery would be
anything other than a 'fishing expedition.'" *Krim*, 989 F.2d at

8

1443.

**B.  Harvey Has No Existing Interest in CTC Minerals**

Although the factual history is complicated, the outcome of
Joyce's motion depends on the legal effect of two pivotal events.
If the August 1998 Agreement is effective as written and the
Carden shares were acquired by the "Parties", then Harvey only
owned a twenty-nine percent interest in CTC Minerals. If the Gray
foreclosure of that twenty-nine percent interest was effective,
then Harvey no longer owns any interest in CTC Minerals, and he
is not a proper plaintiff to bring claims that require an
interest in CTC Minerals.

**1.    The August 1998 Agreement Is Unambiguous**

Joyce contends that the August 1998 Agreement contemplated
that the "Parties" would acquire the shares through CTC Minerals,
which is exactly what happened. Harvey contends that the August
1998 Agreement never went into effect, or that it was later
invalidated or modified, because the agreement contemplated that
the "Parties" would acquire the Carden shares individually.
Because the "Parties" never individually acquired the Carden
shares, Harvey contends that a suspensive condition of the
contract was never fulfilled. Harvey thus maintains that, because
the August 1998 Agreement was never effective, the original 1989

9

and 1990 agreements, assigning him forty-six percent interest are still in effect.[2] Consequently, Gray's auction of Harvey's interest in twenty-nine shares could not have divested him of all interest in CTC Minerals, even if the auction were valid.

Because this is a diversity case, Louisiana law provides the standards for interpreting the contract. *See Exxon Corp. v. Crosby-Mississippi Res., Ltd.*, 154 F.3d 202, 205 (5th Cir. 1998). Under Louisiana law, the interpretation of a contract and the determination of ambiguities are questions of law. *Gebreyesus v. F.C. Schaffer & Assocs., Inc.*, 204 F.3d 639, 642 (5th Cir. 2000). "Under Louisiana law, 'when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.'" *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994) (quoting La. Civ. Code art. 2046). "This established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to

_____

[2] In the complaint, Harvey seeks declaratory judgment that he owns forty-two percent of the common stock in CTC Minerals, apparently under the original 1989 Investor Agreement. Complaint (Rec. Doc. 1 and 78) at 17. In relation to the current motion, Harvey testifies that after the 1990 agreement his interest increased to 46 percent. Pl's Opp. Ex. B at 4. Regardless what percentage Harvey actually owned before the August 1998 Agreement, if the agreement is effective then Harvey's interest is dictated by that superceding agreement.

create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Id.* "If a court finds the contract to be unambiguous, it may construe the intent from the face of the document-without considering extrinsic evidence-and enter judgment as a matter of law." *Am. Totalisator Co., Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993).

Harvey's litigation stance that under the August 1998 Agreement the parties were required to individually acquire the Carden shares does not render the contract legally ambiguous. This Court agrees with the Fifth Circuit Court of Appeals' estimation that Harvey presents a "hyper-technical argument". *Harvey v. Joyce*, 199 F.3d 790, 794 (5th Cir. 2000).

The requirements of the agreement are clear. The first sentence of the August 1998 Agreement reads as follows:

> This Agreement dated August  31 , 1998 is being made by and among Roland J. Joyce ("Joyce"), Peter R. Harvey ("Harvey"), and Robert P. Lofblad ("Lofblad") (collectively, the "Parties") respecting the intended acquisition by the Parties of one hundred percent (100%) of the shares of CTC Minerals, Inc. ("CTC") held by the Carden interests (the "Carden Shares").

Pl.'s Opp. Ex. B attach. 4.

Following this introduction, the first sentence of Paragraph One reads: "If the Parties acquire the Carden shares, Joyce will

11

thereafter own 55% of CTC, and Harvey and Lofblad will thereafter together own 45% of CTC."

As the plain language indicates, the term "parties" refers to Joyce, Harvey, and Lofblad. The only intention on the face of the agreement is that they were to acquire 100 percent of the shares in CTC Minerals before certain other terms of the agreement were to take effect. The term "acquire" is not ambiguous. The mode of acquisition is not a term of the contract. The record indicates that Harvey is an experienced businessman, and, had he sought to strike a deal whereby only the individuals were to acquire the shares, he could have included that condition in the contract.

Far from including a condition of direct acquisition, the terms of the agreement read as a whole give every indication that the parties are *not* to acquire the shares individually. The parties are referred to collectively throughout. The condition to be fulfilled is acquisition of 100 percent of the shares, not forty-five percent and fifty-five percent. Also, upon acquisition of 100 percent of the shares, "Harvey and Lofblad will thereafter together own 45% of CTC." *Id.* It strains the clear language of the agreement to read this as contingent on a requirement that Harvey and Lofblad individually acquire the unenumerated

12

percentage of shares that when combined will give them forty-five percent. Read as a whole, the contract on its face is clear and unambiguous. If the parties acquire 100 percent of CTC Minerals certain terms of the contract go into effect.

Harvey and Joyce agree that following the settlement with the Carden heirs, the only shareholders in CTC Minerals were Joyce, Harvey, and Lofblad. Thus, Joyce, Harvey, and Lofblad, collectively the "Parties", had acquired 100 percent of the shares. The terms of the contract dependent upon this condition went into effect thereafter. Harvey and Lofblad together owned forty-five percent of CTC Minerals.

Harvey does not dispute Joyce's assertion that Lofblad individually owns a sixteen percent interest in CTC Minerals. In fact, Harvey seeks a declaratory judgment to that effect. Complaint (Rec. Docs. 1 and 78) at 17. Therefore, Harvey's share of the collective forty-five percent interest indicated in the August 1998 Agreement is twenty-nine percent.

### 2.      Alternatively, There Is No Triable Issue of Material Fact

Even assuming that the language of the contract is insufficiently explicit, and that the Court must look outside the four corners of the document to the circumstances surrounding it in order to determine the parties' intent, the record taken as a

13

whole could not lead a rational trier of fact to find for Harvey.
That the parties contemplated that CTC Minerals would buy the
shares, or perhaps did not form an intention one way or the
other, is shown by the following:

1) The August 1998 Agreement contains no provision that
the parties must individually purchase the shares, but as
indicated above, more naturally indicates collective action. *See*
Pl.'s Opp. Ex. B attach. 4;

2) CTC Minerals was the entity that had the right to
buy the shares under the initial 1989 shareholders agreement, not
the individual shareholders. Def.'s MPSJ Ex. B attach. 7; Pl.'s
Opp. Ex. B at 4;

3) the parties would be the only shareholders after the
Carden shares were obtained. Pl.'s First Supp. and Amend.
Complaint (Rec. Doc. 78) at ¶ 23; Def.'s MPSJ at 12. Counsel for
Joyce and separately counsel for CTC Minerals indicated during
oral arguments that there was no practical difference between
acquisition of the Carden shares through the corporation or
individually. Counsel for Harvey conceded the lack of practical
difference;

4) the parties acted upon the other provisions in the
contract following CTC Minerals' purchase of the shares: e.g. the

14

Parties being appointed and acting as board of directors, hiring Joyce as president of the company and paying him a salary, the appointment of PriceWaterhouseCoopers as the neutral accountant. Def.'s MPSJ Ex. A attach. 20.  This indicates that they thought the contract was in effect;

      5) the Agreement was made the day before CTC Minerals bought the shares, pursuant to a settlement agreement that gave CTC Minerals the right to buy the shares. Pl.'s Opp. Ex. B at 4; Def.'s MPSJ Ex. A attach. 9;

      6) Harvey provided the money to CTC Minerals to purchase the Carden shares. Pl.'s Opp. Ex. B at 5; Def.'s MPSJ Ex. A at 4;

      7) during meetings with counsel for the Carden heirs, the Joyce interests in the Carden lawsuit discussed purchase of the Carden shares through CTC Minerals and not individually. Def.'s MPSJ Ex. B;

      8) on August 31, 1998, counsel for Joyce, Harvey, and Lofblad in the Carden litigation provided counsel for the Carden heirs letters assigning to CTC Minerals the option to purchase the Carden shares. *Id.*

    The only evidence in the record tending to support Harvey's argument that the shares must be individually purchased comes

from Harvey's own affidavit as to his intentions, filed with his opposition. Such self-serving testimony has been found insufficient to raise an issue of fact. *See e.g., Miller v. Butcher Distributors*, 89 F.3d 265, 268 (5th Cir. 1996). The Court finds Harvey's assertion insufficient to raise a genuine issue of material fact, where the remainder of the evidence, including Harvey's own testimony, contradicts the assertion.

Harvey argues that there is a factual issue as to when he provided the funding to purchase the Carden shares. Because funding is not even addressed in the contract, it is only tangentially related to the parties' intention regarding individual versus corporate acquisition. However, in the interest of thoroughness, the Court will address this argument.

To support his position that Harvey funded CTC Minerals before the August 1998 Agreement, Joyce points to an affidavit by PAL Investments indicating that CTC Minerals executed a promissory note in PAL's favor for $2,000,000 on August 28, 1998, Def.'s Reply Ex. A at 4,[3] and to a record of a funds transfer to

---

[3] Joyce testifies in his affidavit that Harvey (not PAL) transferred the money secured by this promissory note. Def.'s MPSJ Ex. A ¶ 18. Counsel for Joyce at oral arguments clarified that Harvey acted through his company PAL. Harvey has not contested this identification with PAL Investments, LLC, and has testified that he arranged the funding for the settlement.

16

CTC Minerals' account from a Morgan & Williams LTD account at First NBC N.O. bank. *Id.* attach. 19. At oral argument Counsel for Harvey countered that the funds transfer to CTC Minerals occurred on September 9, 1998, not on August 28, 1998.

After the question of the timing of Harvey's funding was contested at oral arguments, Joyce moved for leave to supplement his exhibits with a copy of a business record showing an August 28, 1998 wire transfer from PAL investments to Morgan & Williams Ltd's Escrow Account at First National Bank of Commerce. Harvey opposed the Motion for Leave to Supplement on grounds that Joyce failed to authenticate the document with an affidavit.

As a general rule, "[i]n order for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 997-98 (W.D.Tex. 1997) (citations omitted). Uncertified or otherwise inadmissible documents may be considered by the court in ruling on a motion for summary judgment if the documents are not challenged. *Id.* (citations omitted). Here, however, Harvey has challenged the wire transfer record.

17

Joyce failed to file an authenticating affidavit in connection with his Motion for Leave to Supplement. However, as noted above, in his Motion for Partial Summary Judgment affidavit paragraph eighteen, Joyce testifies that "prior to executing the August 1998 Agreement, on August 28, Harvey transferred over 2 million dollars into an escrow account to be used by CTC to purchase Carden shares." Also, the affidavit by PAL that it received a promissory note from CTC Minerals on August 28, 1998 corroborates the authenticity of the exhibit. Also, the exhibit itself contains circumstantial indicia that it is authentic and admissible as a regularly kept business document, such as the dated fax header, the letterhead of First NBC, the matching identity of the escrow company, etc. In the absence of an affidavit, such circumstantial evidence, which in this case links the exhibit to other uncontested exhibits, can satisfy the requirements for admissibility. *See e.g., Perez*, 969 F.Supp. at 999. Harvey has not argued that the document is not authentic or somehow falsified, only that the technical requirements of admissibility have not been met. Because the Court is satisfied as to the admissibility of this supplemental exhibit it has granted Joyce's Motion for Leave to Supplement.

Joyce argues that the earlier August 28th date supports the

idea that CTC Minerals was to buy the Carden shares, because

Harvey loaned CTC Minerals the money to buy the shares before the

August 1998 Agreement was even created. Harvey argues that the

later date supports his argument that the individuals were to

purchase the shares and that Joyce was to fund the deal. In

support, Harvey testifies as follows:

> This [August 1998] Agreement provided that if Joyce,
> Lofblad, and I acquired C.T. Carden's shares
> personally, then our respective ownership interests
> would be allocated in a manner specified in the August
> 1998 Agreement. Lofblad Joyce and I entered into the
> 1998 Agreement in contemplation that Joyce would
> provide the funding for the acquisition of C.T.
> Carden's shares. However, Joyce was unable and/or
> unwilling to contribute sufficient funds to acquire the
> stock. Thereafter, I was requested to provide the
> necessary funding through a loan to CTC in the amount
> of $2.1 million.
> Utilizing funds I provided, the parties settled the
> Carden lawsuit in September 1998.

Pl.'s Opp. Ex. B at 4-5.

When considered with the record as a whole, this testimony

is insufficient to lead a rational trier of fact to find for

Harvey. As explained above in the Court's central analysis, the

agreement did not "provide" that the parties would acquire the

shares "personally" as Harvey testifies. Neither does the

agreement provide that Joyce would fund the acquisition of the

shares. Experienced businessmen would certainly specify who was

to fund a multi-million dollar acquisition if that was a

19

contemplated term of the contract.

Regarding the intentions of the parties, the record is clear that the August 1998 Agreement was perfected on August 31, 1998. The record is also clear that the Carden lawsuit settlement was performed on September 1, 1998, the very next day. Harvey himself testifies that he provided the funding for CTC Minerals to accomplish this settlement. It defies credulity to argue that counsel for both sides in the settlement negotiations expected CTC Minerals to buy the shares, but between the August 31, 1998 Agreement and the September 1, 1998 settlement, Joyce became "unable and/or unwilling to contribute sufficient funds"; then Joyce requested that Harvey provide funding, which Harvey did, such that the parties' intentions upon entering the Agreement were never fulfilled; yet, despite this, the parties, including Harvey, continued to act in accordance with the terms of the Agreement. Though Harvey now seeks to question the sufficiency of Joyce's evidence that Harvey provided the funding for CTC Minerals to acquire the Carden shares before the August 1998 Agreement, Harvey's own testimony inescapably leads to the same conclusion.

Finally, as indicated at the beginning of this tangent, even if Harvey intended that Joyce provide the funding, that fact does

nothing to support a finding that the parties contemplated individual purchase of the Carden shares. If anything it bolsters the argument that "the Parties" would purchase the shares collectively.

Based on the record as a whole, the Court finds that there is no genuine issue of material fact as to whether the parties entered into the August 1998 Agreement contemplating that the individuals would acquire the Carden shares. The record indicates that the parties contemplated that purchase by CTC Minerals would be satisfactory. Thus, when CTC Minerals purchased the Carden shares on September 1, 1998, the August 1998 Agreement went into effect. As explained above, following this Agreement Harvey's interest in CTC Minerals was twenty-nine percent.

### 3.        The Gray Foreclosure Was Effective

The record indicates that Gray's Estate purported to auction off "all right title and interest in 29 shares" of Certificate Number Two for 100 shares of CTC Minerals Inc., which it believed to be Harvey's entire interest in the corporation. Def.'s MPSJ Ex. A attachs. 12, 13, 14, 15, and 16. This was done to satisfy Harvey's debt under the 1990 Promissory Note. *See* Def.'s MPSJ Ex. A attachs. 3, 4, and 11. Harvey offers two arguments that this auction did not divest him of all interest in CTC Minerals.

Harvey first argues that his interest is in fact forty-six percent, so that even a successful auction of twenty-nine percent would not divest him of all interest. The preceding discussion disposes of this argument.

Harvey also argues that he never owned any shares in CTC Minerals; rather Harvey argues that he owned a "beneficial interest" in Joyce's shares. Therefore, the Gray auction of twenty-nine shares could not effectively dispose of something he did not own.

At oral argument counsel for all parties acknowledged that this was a distinction without a difference. The record of the case further bolsters this conclusion. In the 1990 Agreement that created Harvey's indebtedness, he acknowledged that "on or about March 28, 1989, Roland J. Joyce ("Joyce") and Peter R. Harvey ("Harvey") became holders of shares of common stock in CTC Minerals, Inc." Def.'s MPSJ Ex. A attach. 3 at 1. Security for the 1990 Agreement consisted of "a formal assignment of the CTC shares of stock held by Joyce, Catherine, and Harvey (40% of the total outstanding stock) subject only to the prior assignment of said stock to the Whitney Bank." *Id.* at 2. In his Complaint before this Court, Harvey sought a declaratory judgment that "Peter R. Harvey is an owner of common stock in CTC." Complaint

22

(Rec. Docs. 1 & 78) at 17. Harvey cannot now be heard to argue that he never owned any shares to be auctioned.

In 1990, Harvey pledged his interest in CTC Minerals as security for a promissory note in Gray's favor. In 1998, Harvey entered into a contract that fixed that interest at twenty-nine percent. In 2004, following an apparent default by Harvey, the Gray estate auctioned twenty-nine out of 100 shares in CTC Minerals. As stated in the Notice of Disposition and the Memorandum of Sale (Rec. Docs. 12, 13 and 15), these shares represented the twenty-nine percent interest owned by Harvey. Although Harvey notes that he reserved the right to challenge the foreclosure, he failed to do so directly. Harvey has not challenged the procedural adequacy of the Gray foreclosure, and the record before the court indicates that it complied with the requirements of the Uniform Commercial Code sections 9-610 to 9-616. The only arguments collaterally raised in this proceeding concern the size and nature of Harvey's interest in CTC Minerals. The Court is unpersuaded by those arguments. Therefore, the Court has no reason to question the effectiveness of the Gray foreclosure upon all of Harvey's interest in CTC Minerals.

Accordingly,

**IT IS ORDERED** that Joyce's Motion for Partial Summary Judgment (Rec. Doc. 65) is **GRANTED** insofar as it seeks to dismiss all of plaintiff Peter R. Harvey's claims that require a present interest in CTC Minerals, Inc;

**IT IS FURTHER ORDERED** that the remainder of Joyce's Motion for Partial Summary Judgment (Rec. Doc. 65) is **DENIED.**

New Orleans, Louisiana this the 25th day of January, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

24