UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PETER R. HARVEY AND ROBERT P. LOFBLAD | CIVIL ACTION |
| VERSUS | NO: 99-775 |
| ROLAND J. JOYCE AND CTC MINERALS, INC. | SECTION: "J" (3) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried before the Court, sitting without a jury, on July 31, August 1, and August 2, 2006. At the conclusion of testimony, the Court established an August 11, 2006 deadline for the filing of post-trial memoranda, following which the Court took the matter under submission. Having considered the testimony at trial, the memoranda of counsel, and applicable law, the Court now issues the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a).

## PROCEDURAL BACKGROUND

Plaintiffs filed this case on March 8, 1999 claiming damages for breach of fiduciary duty, breach of contract, and unjust enrichment on the part of defendant Roland J. Joyce ("Joyce").

(Doc. 1.) The claims were based upon agreements relating to capital investments that plaintiffs and Joyce had made in defendant CTC Minerals, Inc. Joyce and CTC Minerals moved to stay the case based upon an arbitration clause contained in a 1998 contract among the plaintiffs and Joyce. (Doc. 9.) The Court denied the motion to stay, and CTC Minerals and Joyce appealed that decision. (Doc. 32.) The case was stayed pending the appeal. (Doc. 38.) The Fifth Circuit reversed this Court, and the case was stayed pending resolution of binding arbitration. (Doc. 54.)

Five and a half years later, Joyce moved to reopen the case because arbitration had never successfully gotten under way. (Doc. 60.) Joyce filed an answer with affirmative defenses and counterclaims seeking reimbursement for monies that Joyce claimed plaintiffs owed to him for expenditures related to CTC Minerals and other ventures. (Doc. 62.) CTC Minerals also answered the complaint. (Doc. 64.) Plaintiffs filed an amended complaint adding claims relating to events that had occurred during the stay. (Doc. 78.)

Joyce quickly moved for partial summary judgment to dismiss all claims by plaintiff Peter R. Harvey ("Harvey") on the grounds that he no longer had an interest in CTC Minerals, and to dismiss the claims of plaintiff Robert P. Lofblad ("Lofblad") concerning the transfer of the CTC Minerals stock certificate to a former

member of the investor group, Roland Gray, Jr. ("Gray"). (Doc. 65.) Lofblad withdrew his claims based on the stock certificate transfer. (Doc. 71.) The Court granted part of Joyce's motion to the extent that Harvey no longer had an interest in CTC Minerals. (Doc. 100.) The Court ruled that the Agreement of August 31, 1998 effectively reallocated the percentages of each of the remaining investor's interest, and that Harvey's interest had subsequently been foreclosed upon in satisfaction of an outstanding debt to Gray. *Id.* However, Harvey's claims for his share of disbursements and for breach of fiduciary duty remained viable. Following this ruling, Joyce amended his counterclaim to add a request that the parties submit their financial claims to a neutral accountant. (Doc. 129.) Joyce then filed a second motion for partial summary judgment (Doc. 134) to dismiss Harvey's claims for breach of fiduciary and contract relating to the foreclosure of his shares. (Doc. 134.) The Court granted the motion. (Docs. 157 & 188.) The Court also granted a motion by plaintiffs to sever all claims for damages arising after 2004. (Docs. 170 & 180.) The Court adopted the parties' joint Pre-trial Order, which finalized the issues for trial. (Doc. 165.)

During trial Harvey, Lofblad, and Joyce entered several stipulations further limiting the issues to be tried. The parties stipulated that only claims related to CTC Minerals would be

tried, and not claims related to other investments. (Doc. 214.) Based on this Joyce dismissed many of his counterclaims. *Id.* They also agreed that the interest percentages and the apportionment of distributions used by defendants' expert George Panzeca were correct. *Id.* At the close of plaintiffs' case, Joyce moved for a Rule 52 Judgment as a Matter of Law arguing that the plaintiffs failed to present evidence to support their damages. Plaintiffs indicated in response that they were relying on George Panzeca's report, with corrections offered by their own expert. The Court took Joyce's Rule 52 motion under advisement.

## FINDINGS OF FACT

1. Plaintiff Peter R. Harvey is a citizen of the State of Illinois. Plaintiff Robert P. Lofblad is a citizen of the State of New Hampshire. Defendant Roland J. Joyce is a citizen of the State of Florida. Defendant CTC Minerals, Inc. is a corporation organized under the laws of the State of Delaware and having its principal place of business in Louisiana.

2. A substantial part of the events giving rise to the claims in this suit occurred in the Eastern District of Louisiana.

3.  On March 29, 1989, Harvey, Lofblad, Joyce, Gray, and John R.
    Allison ("Allison") entered into an Investor Agreement. Each
    agreed to contribute capital to fund CTC Minerals' purchase
    of perpetual mineral interests in various properties.
    Pursuant to the Investor Agreement, Joyce owned 100 shares
    of CTC Minerals for the account and benefit of the
    investors. The 100 shares amounted to 50% of the capital
    stock of CTC Minerals. The other 50% of CTC Minerals were
    owned by C. T. Carden.

4.  The Investor Agreement allocated Investor Interests among
    the investors. The Investor Percentages shifted over the
    years as interests were transferred among the investors for
    various lawful causes. The changing Investor Interests are
    summarized by Joyce's accounting expert, George Panzeca, in
    Exhibit C of his report (Exh. 92). Harvey, Lofblad, and
    Joyce have stipulated that the Investor Interests used by
    Mr. Panzeca are correct. (Doc. 214.) The Court finds that
    these interest percentages are correct as stipulated.

5.  The Investor Agreement provides that "[t]he Investors shall
    share in all income, gains and profits received from or in
    connection with the Properties and in all losses, costs,

5

expenses, and liabilities incurred in connection with the Properties, in proportion to their respective Investor Percentages."

6.  The Court finds Mr. Panzeca's method of accounting and substantiation of figures to be credible except where specifically noted.

7.  Joyce incurred significant business expenses on behalf of CTC Minerals that benefitted all of the investors. These expenses were adequately documented, and repayments made by CTC Minerals were authorized by CTC Minerals' accountants. Harvey and Lofblad have not yet reimbursed Joyce for their proportionate share of some these expenses. The Court finds that the total amounts owed for business expenses are as provided in the second tally of Note 2 of Exhibit F of Mr. Panzeca's report (Exh. 92).[1] Harvey owes Joyce $249,093 for unreimbursed business expenses. Lofblad owes Joyce $98,833 for unreimbursed business expenses. The Court finds that

---

[1] The Court does not adopt Mr. Panzeca's understanding that Joyce is "absorbing" the expenses owed by Gray and Allison. However, they are not parties to this lawsuit and Joyce has not sued them for expenses owed. Harvey and Lofblad do not owe a proportionate share of Gray and Allison's allocation of the expenses.

Joyce's payments to Stone Pigman in relation to this lawsuit were not for the common benefit of the Investors.

8.  Joyce, Harvey, and Lofblad incurred substantial legal expenses on behalf of all of the Investors. The Court finds that the amounts of expenses are substantially as provided in Exhibit G of Mr. Panzeca's report, minus $70,000 of legal fees paid by Joyce to Testa, Hurwitz, & Thibeault in 1996 that he testified may have been for his individual benefit. Thus, Joyce paid a total of $187,264 in legal fees to Testa, Hurwitz for the benefit of all of the Investors, not the $257,264 assumed in Mr. Panzeca's calculations. Harvey and Lofblad paid $375,000 to Testa Hurwitz in 2000. Harvey and Lofblad stipulated to the method of calculating the distribution of legal fees in Mr. Panzeca's report.[2] Accordingly, Joyce underpaid $90,146 in common legal fees;

---

[2] Clearly, Mr. Panzeca's method benefits Harvey insofar as expenses incurred when Joyce had a 38% interest and Harvey had a 46% interest were repaid when Joyce had a 55% interest and Harvey had a 29% interest. Mr. Panzeca holds Joyce liable for 55% of the $375,000 that Harvey and Lofblad paid to Testa, Hurwitz & Thibeault. Because, Mr. Panzeca is offered by Joyce as an expert, and is accepted as such, this Court will defer to his accounting.

7

Harvey underpaid $7,391 in common legal fees; Lofblad overpaid $97,537 in common legal fees.[3]

9.   From 1996 to 2004 Joyce received substantial distributions from CTC Minerals totaling $1,438,618 that were not shared with Harvey and Lofblad according to their proportionate Investor Interests. The parties have stipulated (Doc. 214), and the Court finds, that the amounts of distributions and the allocations to the parties are as provided in Exhibit D to Mr. Panzeca's Report, as revised. (Exh. 92A.) Harvey's share of the disbursements equals $973,954. Lofblad's share of the disbursements equals $464,664.

10.  CTC Minerals is an S Corporation. Joyce as the record shareholder for the benefit of the Investor Group owed substantial state and federal taxes for the income earned by CTC Minerals from 1990 to 2004. However, the income of CTC Minerals from 1990 to 1996 was used to pay down the debt owed on the investment properties that form the basis of CTC Minerals' business. The income used to pay off the debt owed

_____

[3] The Court is relying on the unchallenged assumption of Mr. Panzeca that Harvey and Lofblad each paid one half of the $375,000.

by the investors benefitted them in proportion to their
interests. Although it was not the most felicitous
arrangement, the Court finds that the investors' intent to
share liabilities, as expressed in the Investor Agreement,
encompassed an intent to share taxes owed on CTC Minerals'
income.

11.  Despite repeated requests, Harvey and Lofblad refused to
contribute their portion of the taxes owed because the
income being taxed went directly to pay down the debt on the
investment properties. Joyce was unable to pay the taxes on
time in part because Harvey and Lofblad failed to
contribute, and so Joyce incurred penalties from the IRS and
incurred fees in resolving the debt. Under the
circumstances, these penalties and fees were also a
liability as contemplated in the Investor Agreement.

12.  The Court finds that the allocation of taxes and penalties
according to Investor Interest are as provided in Ex. E of
Mr. Panzeca's Report as revised (Exhs. 92A and 92B). Harvey
owes Joyce $452,440 for taxes and penalties paid. Lofblad
owes Joyce $215,608 for taxes and penalties paid.

13. In 1990, Lofblad advanced $24,000 to CTC Minerals. CTC
    Minerals classified this $24,000 as a capital contribution,
    but Lofblad never received an increased ownership interest
    in the company. CTC Minerals never repaid Lofblad the
    $24,000.

14. The Investor Agreement did not provide for stock
    certificates to be issued to any of the investors other than
    Joyce. CTC Minerals never issued a stock certificate to
    Harvey. Harvey has failed to prove any recoverable damages
    caused by this circumstance. CTC Minerals did not issue a
    stock certificate to Lofblad until November 2004. Lofblad
    has failed to prove any recoverable damages caused by this
    circumstance.

15. Based on Mr. Panzeca's report as modified, and the Court
    findings regarding legal expenses and fees that Joyce has
    insufficiently proven were for the benefit of the Investor
    Group, the Court finds the quanta of damages to be
    distributed among the parties as follows:

|                              | Joyce         | Harvey       | Lofblad      |
|------------------------------|---------------|--------------|--------------|
| Dividends                    | $(1,438,618)  | $ 973,954    | $ 464,664    |
| Tax Liability                | $   668,048   | $(452,440)   | $(215,608)   |
| Expenses                     | $   347,927   | $(249,093)   | $ (98,833)   |
| Legal Fees                   | $   (90,146)  | $  (7,391)   | $  97,537    |
| Total Amount Due To (From)   | $  (512,789)  | $265,030     | $247,760     |

14.  There is insufficient evidence to find a breach of any
     contractual or fiduciary duties other than the monetary
     obligations outlined above.

### CONCLUSIONS OF LAW

1.  The Court has jurisdiction over this action pursuant to 28
    U.S.C. § 1332(a)(1).

2.  Venue is proper in this district pursuant to 28 U.S.C. §
    1391(a).

3.  Plaintiffs' claims sound in contract and concern Joyce's
    obligations pursuant to the Investor Agreement. To have
    standing to bring a shareholder derivative suit, a plaintiff
    must establish "that he owned stock in the corporation at
    the time of the transaction of which he complains and
    throughout the pendency of the suit" *Lewis v. Knutson*, 699
    F.2d 230, 238 (5th Cir. 1983). In light of this requirement,

11

neither Harvey nor Lofblad had standing to assert a
shareholder derivative action on behalf of CTC Minerals
against Joyce in 1999. By the time of the amended complaint
in 2005, Lofblad was a shareholder of record, but the
amended complaint fails to meet the pleading requirements of
Federal Rule of Civil Procedure 23.1. Finally, Plaintiffs
failed to make the requisite showings at trial to succeed in
a shareholder derivative action. Plaintiffs also failed to
plead the remedy of permanent injunctive relief, and in any
event have not demonstrated that such a remedy is warranted.

4.   Joyce bears the burden of proving his counterclaims for
     payment of debts owed by Harvey and Lofblad for expenditures
     related to CTC Minerals. This Court, sitting in diversity,
     must apply state law to substantive matters. *Erie R.R. Co.
     v. Tompkins*, 304 U.S. 64 (1938). The burden of proof in
     diversity cases is allocated according to state law. *Parker
     Supply Co. v. Travelers Indem. Co.*, 588 F.2d 180, 183 (5th
     Cir. 1979). Under Louisiana law, a party making a
     reconventional demand, or counterclaim, bears the burden of
     proving that demand. *Monroe "66" Oil Co. v. Hightower*, 180
     So. 2d 8, 10 (La. App. 2nd Cir. 1965) (citing *Graham v.
     Hemard*, 23 La. Ann. 769 (1871)).

                                 12

5.   When the words of a contract are clear and explicit and lead
     to no absurd consequences, no further interpretation may be
     made in search of the parties' intent. La. Civ. Code art.
     2046. The words of a contract must be given their generally
     prevailing meaning. *Id.* art. 2047. Although a contract is
     worded in general terms, it must be interpreted to cover
     only those things that it appears the parties intended to
     include. *Id.* art. 2051. The obligation imposed by the
     Investor Agreement to share all gains and all losses
     connected to the investment properties, though broad, is
     clear. Plaintiffs' claims for disbursements, dividends, and
     legal fees are covered by this obligation. Joyce's claims
     for business expenses, legal fees, professional fees, taxes,
     and penalties are covered by this obligation. In addition,
     the record evidence tends to show that the Investor Group
     intended for these expenses and disbursements to be shared
     when they were made for the benefit of all of the Investors.

6.   The Court denies Joyce's Rule 52 Motion for Judgment as a
     Matter of Law. Mr. Panzeca's testimony and report were on
     the record and could properly be relied upon by plaintiffs
     in support of their damages. The Court is aware that

13

plaintiffs objected to Mr. Panzeca's report and testimony, and had that report and testimony not been admitted plaintiffs would have no evidence to establish their quanta of damages. However, at trial the parties stipulated that the apportionment of distributions in Exhibit D of Mr. Panzeca's report is correct. This is sufficient to carry plaintiffs' burden of proving the "income, gains and profits received" in connection with CTC Minerals.

7.   Harvey and Lofblad are entitled to a share of dividends and distributions issued by CTC Minerals in proportion to their Investor Interest. Harvey and Lofblad are also entitled to repayment from Joyce of his portion of the Testa, Hurwitz settlement. Joyce is entitled to repayment of business expenses, legal fees, professional fees, taxes, and penalties expended for the common benefit of the investors from Harvey and Lofblad in proportion to their Investor Interest.

8.   Joyce had no contractual or fiduciary duty to cause stock certificates to be issued to Harvey or Lofblad.

9.   A state statute of limitations is considered to be
     substantive under *Erie*, so this Court will apply Louisiana
     law of prescription. *See Vincent v. A.C. & S., Inc.*, 833
     F.2d 553, 555 (5th Cir. 1987).  An action to recover on
     money lent is subject to a three year prescriptive period.
     La. Civ. Code art. 3494. Prescription commences to run from
     the day payment is exigible. La. Civ. Code art. 3595.
     Performance of an obligation not subject to a term is due
     immediately. La. Civ. Code arts. 1777, 2909. Thus, Lofblad's
     claim for repayment of the $24,000 advanced in 1990
     prescribed before suit was filed in 1999.


10.  Because Harvey, Lofblad, and Joyce each lost the claims
     against them, they should share the costs of this suit. Each
     will be taxed one-third of the costs. CTC Minerals was not
     found liable to any party and will not be taxed with any
     costs.


### CONCLUSION

The Investor Agreement imposes broad but enforceable
obligations on the individual investors. Joyce is liable to
Harvey and Lofblad for the distributions he has received from CTC
Minerals. Harvey and Lofblad are liable to Joyce for the

expenditures he has made on their behalf. CTC Minerals is not a party to the agreement and is not liable under any theories properly raised in this suit. Based on the available evidence, Mr. Panzeca has provided a convincing accounting of the quanta of the offsetting obligations of the investor parties. Based upon this accounting, Joyce is liable to Harvey for damages amounting to $265,030 and to Lofblad for damages amounting to $247,760. All claims or counterclaims for other remedies are denied.

New Orleans, Louisiana this the 28th day of September, 2006.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

16